# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

FILED

June 19, 1998

Cecil W. Crowson
Appellate Court Clerk

EVERETT C. SIMMONS, M.D.,           )
                                    )
        Plaintiff/Appellant,        )
                                    )   Appeal No.
                                    )   01-A-01-9709-CH-00495
VS.                                 )
                                    )   Davidson Chancery
                                    )   No. 96-767-II
RUTH E. JOHNSON,                    )
COMMISSIONER OF REVENUE,            )
STATE OF TENNESSEE,                 )
                                    )
        Defendant/Appellee.         )


APPEALED FROM THE CHANCERY COURT OF DAVIDSON COUNTY
AT NASHVILLE, TENNESSEE

THE HONORABLE CAROL L. McCOY, CHANCELLOR


EVERETT C. SIMMONS, M.D.
P. O. Box 339
Grimesland, North Carolina 27837
        Pro Se/Plaintiff/Appellant

JOHN KNOX WALKUP
Attorney General & Reporter

STACY E. GIBSON
Assistant Attorney General
425 Fifth Avenue North
Nashville, Tennessee 37243-0489
        Attorney for Defendant/Appellee


AFFIRMED AND REMANDED


BEN H. CANTRELL, JUDGE

CONCUR:
TODD, P.J., M.S.
KOCH, J.

# O P I N I O N

A doctor who maintained medical licenses in both Tennessee and North Carolina received an assessment for payment of the Tennessee professional privilege tax. He filed suit against the Commissioner of Revenue, challenging the imposition of the tax on the ground that he was not actively engaged in the practice of medicine in Tennessee. The trial court granted summary judgment to the Commissioner. We affirm.

## I.

Dr. Everett Simmons is a North Carolina physician. He has chosen to maintain a medical license in Tennessee as well as in North Carolina, though he does not practice in this state. In order to maintain his professional status in Tennessee, he has had to renew his Tennessee medical license every two years, and to pay the required fee.

Since 1992, he has also had to comply with the requirements of Tenn. Code Ann. § 67-4-1701, et seq. That statute establishes an annual $200 occupational tax on the privilege of engaging in any of over twenty professions that require licensure or registration by the state, including medicine, dentistry and law.

In 1992, the remittance portion of the Professional Privilege Tax form contained boxes that could be checked for active, inactive or retired status. Dr. Simmons' return for that year, which is in the record, shows that he checked the inactive status box. At the bottom of the form, he printed by hand, "I have not actively practiced medicine in the State of Tennessee but retain a license there," and he initialed the statement. Presumably, he did not pay the tax.

In 1993, the Tennessee Department of Revenue changed the tax form to eliminate the three boxes. On the new form, Dr. Simmons hand-printed and initialed a statement identical to the one he had printed on the 1992 form. There is no indication in the record that he paid the occupational tax in 1993 or 1994. On December 31, 1995, the Department sent Dr. Simmons a Notice of Assessment for the 1995 tax year, requesting remittance of the tax, as well as interest and a $50 penalty, for a total assessment of $267.28.

Dr. Simmons then brought this pro se lawsuit against the Department in the Chancery Court of Davidson County, arguing that he should not be liable for the tax. The Department counter-claimed for payment of the assessment. Both parties filed motions for summary judgment. The trial court granted summary judgment for the Department, and ordered Dr. Simmons to pay the assessment, as well as costs and attorney fees. This appeal followed.

II.

The primary issue the plaintiff raised in the trial court and in his appellate brief (he did not appear for oral argument) was whether the privilege tax or occupational tax described in Tenn. Code Ann. § 67-4-1701, et seq. is a tax on the actual practice of medicine in the State of Tennessee or a tax on the mere privilege of being allowed to practice medicine in this state.

While it is true that the language in the statute is somewhat ambiguous on this score, it appears to us that when its various sections are read *in pari materia* with the other statutes referenced by it, it is not difficult to arrive at its true meaning. Tenn. Code Ann. § 67-4-1701 reads:

> **Privilege tax established-- Collection.--** The engaging in any vocation, profession, business or occupation hereinafter named in this part is declared to be a privilege taxable by the state alone. The privilege tax established in this part shall be

- 3 -

collected by the commissioner of revenue and deposited to the state general fund.

Tenn. Code Ann. § 67-4-1702 states that the tax is levied "on the privilege of engaging in the following vocations, professions, businesses or occupations," and lists as those subject to the tax "(p)ersons licensed or registered under title 63 as . . . physicians."

Tenn. Code Ann. § 67-4-1708 reads in relevant part:

**Applicability.--** (a) The privilege tax levied by this part upon the privilege of engaging in certain occupations requiring registration or a license do not apply to a person so registered or licensed, if the person is inactive or retired pursuant to the regulations of the appropriate licensing board.

[Acts 1992, ch. 529 § 17].

The affidavit of Jerry Kosten, an administrator for the Tennessee Board of Medical Examiners, states that "[i]n order to be classified as 'inactive' or 'retired,' a licensee must complete a form requesting such status and file it with the Board." Mr. Kosten also noted that Dr. Simmons had not applied for such status, and is therefore not inactive or retired in accordance with the Board's regulations.

We observe that the regulations of the Board of Medical Examiners are to be found in the Rules and Regulations of the State of Tennessee, 0880-1, et seq. Rule 0880-2-10(1)(b) provides that one who files for inactive status and meets the other requirements of the Board will receive "a license designated on its face in bold print as 'inactive'," and that an individual with an inactive license may not engage in the active practice of medicine in Tennessee. However, he may, upon filing a reactivation application and paying a fee, have his active license restored. Tenn. Rules and Regulations, 0880-2-10(3)(1997).

The provisions of Tenn. Code Ann. § 67-4-1701, et seq., when read together with the medical licensing provisions of Tenn. Code Ann. § 63-6-101, et seq. and the Rules and Regulations of the State of Tennessee indicate that all those individuals in possession of an active Tennessee medical license are obligated to pay the privilege tax, and that having done so, payment of the tax confers upon the licenseholder the privilege of practicing medicine in Tennessee, whether he chooses to exercise the privilege or not. If he is not interested in retaining the privilege, there is an orderly procedure to follow for obtaining an inactive license. Thus, the tax must be construed as a tax upon the privilege, not a tax upon the actual practice of medicine in Tennessee.

### III.

Dr. Simmons has raised some other issues, which merit only brief consideration. He claims that by imposing the tax on licenseholders, the state is indulging in a form of unfair double taxation: that is, a tax upon a tax. But the fee for renewing a medical license is not the same as a tax. A license requirement is imposed for the purpose of regulating some activity under the police power of the state, and a licensing fee is established to cover the cost of such regulation. A tax is imposed primarily for the purpose of raising revenue. *Memphis Retail Liquor Dealers' Association, Inc. v. City of Memphis,* 547 S.W.2d 244, 246 (Tenn. 1977).

It follows that the collection of a licensing fee to regulate a particular profession does not preclude the State from imposing a tax on the same profession. The legislative intention to do that very thing cannot be clearer. Tenn. Code Ann. § 67-4-1705 reads "[t]he taxes levied by this part shall not be construed to be a regulatory fee," while Tenn. Code Ann. § 67-4-1706 reads "[t]he taxes levied by this part are in addition to all other taxes and fees levied by law."

Dr. Simmons also argues that his equal protection rights have been violated by Tenn. Code Ann. § 67-1-1803(a) which provides that legal challenges to the imposition of taxes in Tennessee must be brought in Chancery Court, either in Davidson County or in the county of the taxpayer's domicile or the county of his principal place of business. The plaintiff notes that Tennessee does not maintain a chancery court in Greene County, North Carolina, where he lives, and concludes that he is thus placed at a disadvantage relative to litigants who live or do business in Tennessee counties.

Of course, Tennessee cannot maintain courts in North Carolina, just as North Carolina cannot maintain courts in Tennessee. We note that Dr. Simmons, who has voluntarily chosen to live in one state and maintain a medical license in another, does not by virtue of that choice become a member of any protected class. And since Tennessee has provided a forum for hearing the claims of out-of-state taxpayers like Dr. Simmons, no fundamental rights are implicated by the application of Tenn. Code Ann. § 67-1-1803(a) to his claim. Thus, even if we were to construe the statute as providing disparate treatment to two different classes of citizens, the state is only required to demonstrate a rational basis for maintaining such a distinction. *See Genesco Inc. v. Woods*, 578 S.W.2d 639 (Tenn. 1979).

Such a basis can clearly be found in the impossibility of extending Tennessee courts beyond the borders of this state, in the need to provide a Tennessee forum for out-of-state taxpayers, and in the purpose of enabling in-state taxpayers to litigate their claims in the most convenient forum possible. Dr. Simmons' suggested remedy is that all Tennessee doctors be forced to pursue their litigation in Davidson County in order that they not enjoy an advantage over him. This constitutes a disservice to busy professionals, and to those who rely upon them.

**III.**

The judgment of the trial court is affirmed. Remand this cause to the Chancery Court of Davidson County for further proceedings consistent with this opinion. Tax the costs on appeal to the appellant.

_____
BEN H. CANTRELL, JUDGE

CONCUR:

_____
HENRY F. TODD, PRESIDING JUDGE
MIDDLE SECTION

_____
WILLIAM C. KOCH, JR., JUDGE